**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) JUDITH ANN HALL | ) | |
|        Plaintiff, | ) | |
| | ) | |
| vs | ) | **Case No.: 15-cv-670-CVE-TLW** |
| | ) | |
| 1) OKLAHOMA DEPARTMENT OF | ) | |
| HUMAN SERVICES, A Governmental Agency, | ) | |
| 2) DEBORAH SMITH, in her official capacity, | ) | |
| 3) AMY WHITE, in her official capacity, | ) | |
| 4) DAVID CLIFTON, in his official capacity, | ) | |
| 5) NANCY ROBISON, in her official capacity | ) | |
| 6) LYNN BANKS, in her individual capacity | ) | |
| and in her official capacity | ) | |
| 7) ROBERT KNUCKLES, in his individual | ) | **Attorney Lien Claimed** |
| capacity, | ) | |
|        Defendants. | ) | **Jury Trial Demanded** |

## COMPLAINT

COMES NOW Plaintiff, Judith Ann Hall, through her attorneys of record, Eric W. Stall and S. Thomas Sawyer of SWAB & STALL, P.C., and brings this action against Defendants, Oklahoma Department of Human Services, Deborah Smith, Amy White, David Clifton, Nancy Robison Lynn Banks, and Robert Knuckles for violations of her constitutional, statutory, and common law protected rights arising out of her employment and interference with employment by Defendants.

## PARTIES & JURISDICTION

1.    This is an action for damages and to secure protection of, and to redress deprivation of, rights secured by: Title VII of the Civil Rights act of 1964, as amended 42 U.S.C §2000e et seq. ("Title VII"), providing for relief from a hostile work environment, retaliation or discrimination on the basis of, *inter alia*, gender and race; the Age Discrimination in Employment Act of 1967 ("ADEA"), providing for relief from a hostile work environment,

retaliation or discrimination based on age for individuals who are 40 years of age or older; the Oklahoma Anti Discrimination Act, 25 O.S. §1350 et seq ("OADA"), providing relief from a hostile work environment, retaliation or discrimination in employment on the basis of, *inter alia*, gender, race and age; 42 U.S.C. §1983, providing for relief against the deprivation rights and privileges secured to her by the United States Constitution for violations of the Defendants; and Oklahoma State statutory and common law causes of action, providing redress from tortuous conduct.

2.      Plaintiff is a resident of Tulsa County, Oklahoma

3.      Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on January 22, 2015, complaining of a hostile work environment, discrimination, and retaliation based upon her gender, race and age. A Notice of Right to Sue was received by Plaintiff on or about August 26, 2015. This Complaint has been filed within ninety days (90) of the receipt of the Notice of Right to Sue. As such, Plaintiff has fully complied with all prerequisites in this Court under Title VII, ADEA, and OADA.

4.      Plaintiff filed a notice with the Oklahoma Office of the Risk Management Administrator of the Office of Management and Enterprise Services ("OMES") on April 14, 2015, pursuant to the Oklahoma Governmental Tort Claims Act, 50 O.S. §151 *et seq*. ("OGTCA"). OMES responded to Plaintiff's notice with a request for additional information and a statement that the statutory 90 days to review and evaluate the claim would begin on May 1, 2015. OMES failed to deny the claim within 90 days of May 1, 2015, thus pursuant to the OGTCA the claim was considered by law to be denied on July 30, 2015. This Complaint has been filed within one hundred eighty days (180) from that denial date. As such, Plaintiff has fully complied with all prerequisites under the OGTCA.

5.      This action lies properly in the District Court of Tulsa County, as Defendants conduct regular business in Tulsa County, State of Oklahoma.

6.      Jurisdiction of the Court is proper under §706(f)(3) of Title VII, 42 U.S.C. §2000e-5(f)(3). In addition, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343 (Civil Rights), 28 U.S.C. §1337 (Acts of Congress regulating commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

7.      Defendant Oklahoma Department of Human Recourses ("ODHS") is an Oklahoma governmental agency conducting regular activity in the State of Oklahoma. Defendant ODHS regularly employs more than fifteen (15) people.

8.      Defendant Deborah Smith is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of ODHS.

9.      Defendant Amy White is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of ODHS.

10.     Defendant David Clifton is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of ODHS.

11.     Defendant Nancy Robison is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of ODHS.

12.     Defendant Lynn Banks is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of ODHS.

13.     Defendant Robert Knuckles is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of ODHS.

14.     Compensatory damages are sought pursuant to Federal statutes, including 42 U.S.C. § 2000e-5(g), and Oklahoma statutes and common law.

15.     Costs and attorney's fees may be awarded pursuant to Federal statutes, including 42 U.S.C. § 2000e 5(g), and Oklahoma statutes and common law.

16.     Punitive damages are sought pursuant to Federal statutes, including 42 U.S.C. §1981, and Oklahoma statutes and common law.

## VENUE

17.     This action lies properly in the Northern District of Oklahoma pursuant to 28 U.S.C § 1391(b), as the unlawful employment practices complained of herein occurred within the Northern District of Oklahoma and because Defendant is a governmental entity conducting regular activity in the Northern District of Oklahoma.

## FACTS COMMON TO ALL CLAIMS

18.     Plaintiff, Judith Ann Hall, incorporates as if re-alleged Paragraphs 1-17.

19.     Plaintiff is a female, African-American, born in 1963.

20.     Plaintiff was hired by Defendant ODHS on or about July 22, 1996.

21.     Plaintiff was employed by Defendant ODHS at all times pertinent to the allegations contained in this Complaint.

22.     Plaintiff was an unclassified, at-will employee of Defendant ODHS.

23.     Due to the actions and inactions of Defendants, Plaintiff's employment with Defendant ODHS ended on December 19, 2014.

24.     During Plaintiff's tenure with ODHS, Defendants repeatedly placed Plaintiff in abusive and dangerous, or at minimum potentially dangerous situations, which created an abusive and hostile work environment or which created a disregard of the likelihood of creating a hostile work environment.

25.     During Plaintiff's tenure with ODHS, Defendants repeatedly placed Plaintiff in abusive

and dangerous, or at minimum potentially dangerous situations, which created an unsafe work environment or failing to ensure a safe work environment.

26.     During Plaintiff's tenure with ODHS, Defendants repeatedly failed and refused to investigate Plaintiff's complaints of abusiveness in the workplace which created a hostile and unsafe work environment or failed to ensure that a non-hostile or safe work environment existed.

27.     During Plaintiff's tenure with ODHS, Defendants repeatedly created, or allowed to exist and to escalate, a hostile work environment for Plaintiff and failed or refused to take reasonable measures to ensure that such hostile work environment did not exist.

28.     On or about August 15, 2000, Plaintiff (at that time Judith Ann Lewis) worked late and while Ms. Alicia Bullock (now Alicia Craig), a fellow co-worker, and Plaintiff were leaving work for the day, Defendant Knuckles followed them to the elevator. While they were waiting for the elevator door to open, Defendant Knuckles was clearly still upset with Plaintiff and became angry and began verbally assaulting her. The elevator opened and Ms. Craig and Plaintiff got on and Defendant Knuckles, still verbally assaulting Plaintiff, followed the ladies into the elevator. When the elevator door closed, Defendant Knuckles continued to verbally assault Plaintiff and then physically attacked her by choking her. While Plaintiff struggled to get Defendant Knuckles hands from around her neck, Ms. Craig was telling Defendant Knuckles to stop attacking Plaintiff. Once the elevator door opened, Defendant Knuckles stopped choking Plaintiff and the two ladies fled the elevator. The next day Plaintiff reported the incident to Defendant Banks, Plaintiff's direct supervisor. Plaintiff provided Defendant Banks with written account describing the assault and battery. However, despite reporting the assault and batttery to Defendant Banks and submitting the written statement, no action was ever taken against Defendant Knuckles and no one besides Defendant Banks ever interviewed Plaintiff regarding

the incident. No corrective action was taken by ODHS management and Defendant Knuckles was not reprimanded or terminated and was allowed to continue to work alongside Plaintiff.

29.     On or about August 22, 2000, Plaintiff was at her desk and Defendant Knuckles again placed his hands around her neck in a manner threatening to Plaintiff. Plaintiff was again terrified and immediately reported the incident to Defendant Banks. No corrective action was taken by ODHS management and Defendant Knuckles was not reprimanded or terminated and was allowed to continue to work alongside Plaintiff.

30.     In the Fall of 2009, Plaintiff was promoted to Foster Care Supervisor and Defendant Knuckles was assigned to work in her unit. Defendant Knuckles had a pattern of arriving to work late and refused to call Plaintiff to advise her that he would be late. When Plaintiff attempted to speak with Defendant Knuckles about his tardiness to work, he would become rude, disrespectful and abusive. Plaintiff reported Defendant Knuckles' abusive and insubordinate behavior to Defendant Robison, ODHS County Director. Defendant Robison brushed off the incident explaining to Plaintiff that such behavior was just Defendant Knuckle's normal behavior. Plaintiff does not have personal knowledge of whether Defendant Robison talked with Defendant Knuckles, however, if any discussion was held it was to no avail as his insubordinate behavior towards Plaintiff continued without any ODHS intervention.

31.     During 2009, on two separate occasions, Plaintiff reported to Defendant Robison that Defendant Knuckles was not timely completing his work and that the unit was receiving complaints regarding his work. Each time that Plaintiff addressed these concerns with Defendant Knuckles, he would become loud, angry and verbally abusive towards Plaintiff. After each such incident, Plaintiff would report Defendant Knuckle's abusive and insubordinate behavior to Defendant Robison, and Defendant Robison would advise Plaintiff that she had spoken to

6

Defendant Knuckles regarding his insubordinate behavior. Despite Defendant Robison reporting that she had admonished Defendant Knuckles regarding his insubordinate behavior, Mr. Knuckle's attitude and behavior did not change.

32.     During this time frame, ODHS management was always aware of the insubordinate behavior of Defendant Knuckles and his apparent contempt for Plaintiff, yet ODHS management never investigated or remedied the situation and thereafter Defendant Knuckles insubordinate and abusive behavior escalated.

33.     In 2010, Defendant Knuckles disagreed with his yearly evaluation that was written by Plaintiff and refused to sign the evaluation. Defendant Knuckles threatened Plaintiff that she would regret what she was doing to him (presumably the critical evaluation). Thereafter, Defendant Knuckles spoke with Defendant Robison regarding the evaluation and requested that she make changes to the evaluation so that it was more favorable to Defendant Knuckles. Over Plaintiff's objection, Defendant Robison directed Plaintiff to make the changes to the evaluation and Defendant Knuckles agreed to sign the revised evaluation.

34.     In 2011, Defendant Knuckles was relocated to another ODHS office in Tulsa and worked as a foster care worker under the supervision of Ms. Kelli Heath and Defendant Banks.

35.     In 2012, Defendant Knuckles was promoted to a Foster Care Supervisor position and returned to the ODHS offices located at 444 S. Houston Ave, Tulsa, OK. Despite the known problems that Plaintiff had with Defendant Knuckles in the past, Plaintiff was assigned to mentor Defendant Knuckles in his new role as a supervisor. Defendant Knuckles resumed his abusive and behavior toward Plaintiff. On several occasions, Defendant Knuckles threatened Plaintiff that if he lost his job or was demoted that it would be her fault and she would pay. Despite being advised of the aggressive, insubordinate and abusive behavior of Defendant Knuckles, ODHS

management failed and refused to conduct any formal investigation and no other corrective action was taken by ODHS management and Defendant Knuckles was not reprimanded nor was Defendant Knuckles terminated; instead, Defendant Knuckles was allowed to continue to work under Plaintiff's mentorship.

36.     In 2012, Defendant Knuckles and his staff were having difficulty meeting ODHS deadlines for approval to place children from the shelter to foster home or from foster home to foster home. Plaintiff recalls having several conversations with Defendant Banks regarding Defendant Knuckles' ability to supervise foster care workers. On several occasions, Ms. Heath and Defendant Banks would travel over to Defendant Knuckles' office to visit with him regarding his staff's delinquent work and his supervising skills. After such meetings, Defendant Knuckles would aggressively approach Plaintiff and accuse her of reporting him and his staff to ODHS management. During this time period, Defendant Knuckles' bullying and threats against Plaintiff continued and Plaintiff regularly reported the abusive and insubordinate behavior of Defendant Knuckles to ODHS management. Despite being advised of the insubordinate and abusive behavior by Defendant Knuckles, ODHS management failed and refused to conduct any formal investigation, no corrective action was taken by ODHS management and Defendant Knuckles was allowed to continue to work under Plaintiff's supervision and mentorship.

37.     In November 2012, Plaintiff was promoted to a Foster Care Field Manager – Region 5, Plaintiff again became Defendant Knuckle's direct supervisor and Defendant Banks became Plaintiff's direct supervisor. During this time period, Defendant Knuckles continued his aggressive, abusive and insubordinate actions and behavior towards Plaintiff. Each time that Defendant Knuckles was abusive towards Plaintiff, she would report the behavior to Defendant Banks and often reported the behavior to Defendant White, Deputy Director of Bridge Division.

Despite being advised of the insubordinate and abusive behavior of Defendant Knuckles, ODHS management failed and refused to conduct any formal investigation, no corrective action was taken by ODHS management and Defendant Knuckles was not reprimanded or terminated; instead, Defendant Knuckles was allowed to continue to work under Plaintiff's supervision.

38.    On one occasion in 2012-2013, a foster care worker working under the supervision of Defendant Knuckles requested to be moved because Defendant Knuckles lacked knowledge regarding ODHS policies and procedures. Following a meeting between Plaintiff, Defendant Knuckles and Defendant Clifton, DHS Field Analyst, ODHS management honored the foster care worker's request to be reassigned. Thereafter, in the presence of Defendant Clifton, Defendant Knuckles became very angry and accused Plaintiff of being unfair, of instigating the worker's request to be reassigned, and accused Plaintiff of being a racist. Despite this altercation occurring in the presence of Defendant Clifton, part of ODHS management, ODHS management failed and refused to conduct any formal investigation, no corrective action was taken and Defendant Knuckles was not reprimanded or terminated but rather Plaintiff was required to continue to supervise Defendant Knuckles in a hostile work environment.

39.    In 2013, Plaintiff was advised that Defendant Knuckles had wrongfully allowed the placement of children under the age of five (5) in the Shelter when alternative family placement options existed. Plaintiff confronted Defendant Knuckles regarding the ODHS policy violation and he became angry and threatened Plaintiff. The incident was reported to Defendant Banks and ODHS management yet no complete investigation was conducted, no corrective action was taken against Defendant Knuckles by ODHS management and Defendant Knuckles was not reprimanded or terminated but rather was allowed to continue to work under the supervision of Plaintiff.

40.     In 2013, Defendant Knuckles was in Plaintiff's office yelling at her regarding a work issue. Defendant White came into Plaintiff's office, sat down and told Defendant Knuckles that she never again wanted to hear him raise his voice at Plaintiff. No other corrective action was taken by ODHS management towards Defendant Knuckles. Defendant Knuckles was not further reprimanded nor was he terminated; instead, Defendant Knuckles was allowed to continue to work under Plaintiff's supervision.

41.     In 2013, while Plaintiff was still supervising Defendant Knuckles, Defendant White asked Defendant Banks to determine if Defendant Knuckles was still on his probationary period as a supervisor and if so could he be demoted. Defendant Banks notified Plaintiff and informed her as to what Defendant White had requested of Defendant Banks. Defendant Banks instructed Plaintiff to determine if Defendant Knuckles was still on his probationary period as a supervisor. Plaintiff contacted the ODHS Human Management Resource Department and was told that Defendant Knuckles probation period had ended. Plaintiff called Defendant Banks and informed her of her finding. Defendant Banks said to Plaintiff that she and Defendant Knuckles must work together.

42.     ODHS management was aware of Mr. Knuckle's aggressive, abusive and insubordinate conduct towards Plaintiff. Despite this knowledge, DHS management failed and refused to reassign Defendant Knuckles to a position not supervised by Plaintiff and, instead, DHS management left Plaintiff to supervise Defendant Knuckles and to be exposed to his continued aggressive, abusive and insubordinate behavior towards her.

43.     Throughout 2013, Defendant Knuckles continued his insubordinate and abusive behavior towards Plaintiff. Each time there was an incident involving Defendant Knuckles, Plaintiff reported that incident to Defendant Banks, Defendant White or both, thereby placing DHS

management on notice of the continuing abuse and hostile work environment.

44.     In November 2013, Plaintiff was still directly supervising Defendant Knuckles. Plaintiff conducted a meeting with Defendant Knuckles at which time he became angry and threatened Plaintiff. During this incident, Defendant Knuckles threatened Plaintiff by declaring that he would "get you" if he lost his job. Plaintiff was again terrified and immediately reported the incident to Defendant Banks and ODHS management. Defendant Knuckles was temporarily reassigned to a different ODHS office but returned to the supervision of Plaintiff in February 2014.

45.     Upon information and belief, witnesses to the November 2013 incident provided written statements to ODHS management.

46.     Other than the temporary reassignment, no investigation was conducted by ODHS management, no other corrective action was taken by ODHS management, Defendant Knuckles was not further reprimanded nor was Defendant Knuckles terminated because of the November 2013 incident; instead, Defendant Knuckles was allowed to continue to work under Plaintiff's supervision and Plaintiff was forced her to remain in the abuse and hostile work environment.

47.     In February 2014, Defendant Banks met with Defendant Knuckles and Plaintiff in Defendant Banks office. Defendant Banks informed both Defendant Knuckles and Plaintiff that Defendant Knuckles would be returning to work at 444 South Houston Ave, Tulsa, OK. Defendant Banks also stated that Defendant Knuckles and Plaintiff needed to work together and stop giving the white man a reason to discuss our business. Defendant Banks also said that, if Plaintiff insisted that Defendant Knuckles be issued a written reprimand, she would have to write up Plaintiff. Then Defendant Banks reminded Defendant Knuckles and Plaintiff that we did not need the white man in our business. Defendant Knuckles and Plaintiff asked if they had any

questions for Defendant Banks. While driving back to the office Plaintiff received a call from Defendant Banks and asked if she was okay, Plaintiff stated that she was not okay. Defendant Banks then reminded Plaintiff that she was an at-will employee and that at any time Defendant White could discharge Plaintiff without cause and that's why the white man did not need to be involved with their business.

48.     In March or April 2014, Plaintiff telephoned Defendant Banks and reported that Defendant Knuckles was being abusive and insubordinate and that an employee working under his supervision was complaining about his lack of leadership. Defendant Banks asked that Plaintiff and Defendant Knuckles come to her office at noon on that day. Plaintiff arrived at Defendant Banks office at 11:45 am. Defendant Knuckles arrived after 12:30pm. There was no mention of Mr. Knuckle's late arrival. The meeting started and Plaintiff informed Defendant Banks of the staff's concerns that Defendant Knuckles lacked leadership skills and that Defendant Knuckles was refusing to complete tasks assigned to him by Plaintiff, his supervisor. Defendant Banks reminded Defendant Knuckles that he was to comply with Plaintiff's instructions and that he needed to be mindful that the white man was looking for a reason to intervene in their business.

49.     In 2014, on two separate occasions, Plaintiff was approached, first by Defendant White and then by Woodie Gamble, and asked about unfounded rumors that were circulating that Plaintiff and Defendant Knuckles were having an intimate relationship and that it was this relationship that was at the root of the insubordination and abusiveness of Defendant Knuckles. Plaintiff vehemently denied the false rumors. This shows ODHS management's knowledge of the abusive and hostile work environment that Plaintiff endured and ODHS management's attempt to conceal or deflect from Plaintiff's allegations.

50.     In June 2014, Plaintiff conducted a review of a foster care placement and determined that

Defendant Knuckles had failed to timely review and approve the placement. Plaintiff was tasked

with the assignment to confront Defendant Knuckles regarding his failure to timely review and

approve the placement and to present him with a written reprimand. Due to Mr. Knuckle's

history of abusiveness, Plaintiff asked Defendant Banks to be present at the meeting. Despite

Plaintiff's history with Defendant Knuckles, Defendant Banks declined to be present and

directed Plaintiff to meet with Defendant Knuckles. During the meeting, Defendant Knuckles

began yelling at Plaintiff and refused to sign the written reprimand. Defendant Knuckles accused

Plaintiff of harassing him and trying to cause him to lose his job. Defendant Knuckles threatened

Plaintiff that if he lost his job, she would regret it. Plaintiff reported the aggressive, abusive and

insubordinate behavior and actions of Defendant Knuckles to ODHS management. No corrective

action was taken by ODHS management, and Defendant Knuckles was not reprimanded or

terminated; instead, Defendant Knuckles was allowed to continue to work under Plaintiff's

supervision which forced Plaintiff to remain in the abusive and hostile work environment.

51.     In July 2014, Plaintiff was attending training out of state and had to have several phone

conferences with Defendant Knuckles regarding several emails that were flagged as important.

One of the conversations was regarding a resource parent being approved to receive money due

to her from a settlement agreement. Plaintiff asked if the family had successfully completed the

entire requirement process and Defendant Knuckles replied yes. Plaintiff knew Mr. Knuckle's

statement was false and when she confronted him he could not explain his initial response.

Plaintiff explained to Defendant Knuckles that his action would be reported to ODHS

management. Defendant Knuckles began yelling at Plaintiff during the conversation. Plaintiff

reported Mr. Knuckle's aggressive, abusive and insubordinate behavior to Defendant Banks.

Despite the report, no corrective action was taken by ODHS management and Defendant Knuckles was not reprimanded or terminated; instead, Defendant Knuckles was allowed to continue to work under Plaintiff's supervision which forced Plaintiff to remain in the abusive and hostile work environment.

52.     By mid-year 2014, Plaintiff had become so afraid of Defendant Knuckles that she insisted that she always have a witness present in all of her communications with Defendant Knuckles.

53.     In July 30, 2014, Defendant Knuckles verbally assaulted and threatened Plaintiff at the ODHS offices.  During this incident, Defendant Knuckles became very angry at Plaintiff. When Plaintiff reached for the phone to call a supervisor, Defendant Knuckles snatched the phone receiver from her hand and raised the phone receiver is if he was going to strike Plaintiff. When Defendant Knuckles made additional threatening statements to Plaintiff, she fled the office. Despite having knowledge of the history of the abuse suffered by Plaintiff at the hands of Defendant Knuckles, ODHS chose not to tell Plaintiff that earlier on July 30, 2014 Defendant Knuckles had complained to Defendant Banks and ODHS that Plaintiff treated him unfairly. Had Plaintiff been advised of this complaint by Defendant Knuckles, she would never have agreed to meet with Defendant Knuckles and this incident would not have occurred.

54.     On August 19, 2014, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) due to the events she suffered at the hands of Defendants. Plaintiff was advised not to return to work and was subsequently placed on FMLA leave.

55.     Only after Plaintiff notified Ms. Tricia Howell of her PTSD condition that ODHS initiated an investigation into Plaintiff's allegations against Defendant Knuckles and the failure of ODHS to take reasonable corrective actions.

56.     On November 13, 2014, ODHS informed Plaintiff her leave of absence was being

cancelled and that Plaintiff was required to return to work at ODHS. ODHS did not inform Plaintiff that any changes were made to protect Plaintiff from further harm and ODHS did not provide any assurances that Plaintiff would be protected from further harm.

57.    On December 19, 2014, Plaintiff determined that her medical condition and the apparent persistent discrimination and hostile work environment at ODHS, that ODHS management refused to acknowledge and remedy, mandated that Plaintiff terminate her employment relationship with ODHS.

58.    At no time during the span of years in which Defendant Knuckles was allowed to carry on his abusive and insubordinate actions and attitudes towards Plaintiff did ODHS management conduct any investigation into Plaintiff's allegations and the accounts of those numerous persons that witnessed Defendant Knuckles maltreatment of Plaintiff. Furthermore, ODHS management never took any corrective action towards Defendant Knuckles, Defendant Knuckles was not reprimanded or terminated and was allowed to continue to work alongside Plaintiff.

59.    Each incident in which Defendant Knuckles was verbally, emotionally and physically abusive towards Plaintiff caused Plaintiff emotional distress which ultimately led to her suffering from PTSD. Had ODHS management appropriately and reasonably intervened following the first incident of abusive and insubordinate actions by Defendant Knuckles towards Plaintiff, the emotional and physical damages to Plaintiff would never have occurred.

60.    In December 2014, in the administrative termination hearing of Alicia Craig, ODHS management, by and through David Clifton, disclosed Plaintiff's confidential private medical information without proper notice and approval of Plaintiff, thereby violating Plaintiff's protections provided by state and federal law.

61.    Generally, during the time period of 2000 to 2011, while under the supervision of

Plaintiff, Defendant Knuckles' aggressive, abusive and insubordinate behavior towards Plaintiff was something that occurred on nearly a weekly basis and was witnessed by numerous ODHS employees and members of ODHS management.

62.     Generally, during the time period of 2012 to 2014, while under the supervision of Plaintiff, Mr. Knuckle's aggressive, abusive and insubordinate behavior towards Plaintiff was something that occurred on nearly a daily basis and was witnessed by numerous ODHS employees and members of ODHS management.

63.     During the course of her employment at ODHS, Plaintiff's work environment was permeated with an abusive and hostile environment, amounting to discriminatory conduct, caused by Defendant Knuckles and ODHS management, which was allowed to continue unchecked by ODHS management.

64.     Plaintiff was forced to work in and deal with this hostile environment on a regular basis during her employment at ODHS.

65.     Any time Plaintiff complained of or reported what was happening to her, ODHS management failed and refused to conduct an investigation and failed and refused to take any corrective actions; instead, ODHS management forced Plaintiff to continue to endure an abusive and hostile work environment and sometimes threatened Plaintiff with disciplinary action, which ultimately caused her to be emotionally and physically harmed and damaged, including suffering from PTSD.

66.     Throughout Plaintiff's employment at ODHS, ODHS management failed to take appropriate corrective actions to eliminate the abusive and hostile environment that Plaintiff endured.  Further, ODHS failed to follow ODHS policies and procedures regarding such wrongful conduct, and facilitated an environment of abuse and hostility by failing to eliminate

the cause.

67.     Collectively and individually, Defendants' actions and inactions have contributed to and created a hostile, discriminatory and unsafe work environment which has caused much humiliation, embarrassment, pain and suffering, mental anguish and distress, discomfort, and emotional damage to Plaintiff. In addition, as a result Defendants' actions and inactions, Plaintiff has been diagnosed with, and is now suffering from, PTSD.

### FIRST CLAIM FOR RELIEF:
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (AS TO ALL DEFENDANTS)

68.     Plaintiff incorporates as if re-alleged Paragraphs 1-67.

69.     By continually subjecting the Plaintiff to a hostile work environment based on her gender and/or race and failing to properly ensure a non-hostile work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

   a.     Back pay and lost benefits; front pay until normal retirement
   b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
   c.     Punitive damages for the intentional and knowing acts committed by Defendants;
   d.     Her attorney fees and the costs and expenses of this action; and
   e.     Other such other relief as the Court deems just and equitable.

### SECOND CLAIM FOR RELIEF:
### DISCRIMINATION IN VIOLATION OF TITLE VII
### (AS TO ALL DEFENDANTS)

70.     Plaintiff incorporates as if re-alleged Paragraphs 1-69.

71.     By continually subjecting the Plaintiff to discrimination based on her gender and/or race and failing to properly ensure a non-discriminatory work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

     a.     Back pay and lost benefits; front pay until normal retirement
     b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
     c.     Punitive damages for the intentional and knowing acts committed by Defendants;
     d.     Her attorney fees and the costs and expenses of this action; and
     e.     Other such other relief as the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF TITLE VII
## (AS TO ALL DEFENDANTS)

72.    Plaintiff incorporates as if re-alleged Paragraphs 1-71.

73.    By continually subjecting the Plaintiff to retaliation based on her complaints regarding a hostile work environment based on her gender and/or race and failing to properly ensure a non-hostile work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

     a.     Back pay and lost benefits; front pay until normal retirement
     b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
     c.     Punitive damages for the intentional and knowing acts committed by Defendants;
     d.     Her attorney fees and the costs and expenses of this action; and
     e.     Other such other relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF TITLE VII
## (AS TO ALL DEFENDANTS)

74.    Plaintiff incorporates as if re-alleged Paragraphs 1-73.

75.    By continually subjecting the Plaintiff to retaliation based on her complaints regarding discrimination based on her gender and/or race and failing to properly ensure a non-discriminatory work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a.  Back pay and lost benefits; front pay until normal retirement
b.  Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c.  Punitive damages for the intentional and knowing acts committed by Defendants;
d.  Her attorney fees and the costs and expenses of this action; and
e.  Other such other relief as the Court deems just and equitable.

### FIFTH CLAIM FOR RELIEF:
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADEA
### (AS TO ALL DEFENDANTS)

76.  Plaintiff incorporates as if re-alleged Paragraphs 1-75.

77.  By continually subjecting the Plaintiff to a hostile work environment based on her age and failing to properly ensure a non-hostile work environment, Defendants have violated the Age Discrimination in Employment Act of 1967.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a.  Back pay and lost benefits; front pay until normal retirement
b.  Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c.  Punitive damages for the intentional and knowing acts committed by Defendants;
d.  Her attorney fees and the costs and expenses of this action; and
e.  Other such other relief as the Court deems just and equitable.

### SIXTH CLAIM FOR RELIEF:
### DISCRIMINATION IN VIOLATION OF THE ADEA
### (AS TO ALL DEFENDANTS)

78.  Plaintiff incorporates as if re-alleged Paragraphs 1-77.

79.  By continually subjecting the Plaintiff to a discrimination based on her age and failing to properly ensure a non-discriminatory work environment, Defendants have violated the Age Discrimination in Employment Act of 1967.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a. Back pay and lost benefits; front pay until normal retirement
b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c. Punitive damages for the intentional and knowing acts committed by Defendants;
d. Her attorney fees and the costs and expenses of this action; and
e. Other such other relief as the Court deems just and equitable.

## SEVENTH CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF THE ADEA
## (AS TO ALL DEFENDANTS)

80.     Plaintiff incorporates as if re-alleged Paragraphs 1-79.

81.     By continually subjecting the Plaintiff to retaliation based on her complaints regarding a hostile work environment based on her age and failing to properly ensure a non-hostile work environment, Defendants have violated the Age Discrimination in Employment Act of 1967.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a. Back pay and lost benefits; front pay until normal retirement
b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c. Punitive damages for the intentional and knowing acts committed by Defendants;
d. Her attorney fees and the costs and expenses of this action; and
e. Other such other relief as the Court deems just and equitable.

## EIGHTH CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF THE ADEA
## (AS TO ALL DEFENDANTS)

82.     Plaintiff incorporates as if re-alleged Paragraphs 1-81.

83.     By continually subjecting the Plaintiff to retaliation based on her complaints regarding discrimination based on her age and failing to properly ensure a non-discriminatory work environment, Defendants have violated Age Discrimination in Employment Act of 1967.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a. Back pay and lost benefits; front pay until normal retirement
b. Compensatory damages for her mental anguish, pain and suffering and other

non-pecuniary losses;

c.    Punitive damages for the intentional and knowing acts committed by Defendants;

d.    Her attorney fees and the costs and expenses of this action; and

e.    Other such other relief as the Court deems just and equitable.

### NINTH CLAIM FOR RELIEF:
### DISCRIMINATION IN VIOLATION OF THE OADA
### (AS TO ALL DEFENDANTS)

84.    Plaintiff incorporates as if re-alleged Paragraphs 1-83.

85.    By continually subjecting the Plaintiff to a discriminatory and hostile work environment based on her gender, race, and/or age and failing to properly ensure a non-discriminatory and non-hostile work environment. Defendants have violated the Oklahoma Anti Discrimination Act, 25 O.S. § 1350 and their actions are contrary to a clear mandate of Oklahoma public policy and statutes, as articulated by 25 O.S. §§ 1101 & 1302.

86.    By treating Plaintiff differently than similarly situated employees, Defendants have violated Oklahoma's anti-discrimination statutes, 25 O.S. §§ 1101, 1302, & 1350.

87.    Plaintiff is suited to recover damages, including "liquidated damages" pursuant to 25 O.S. § 1350, such as emotional distress and punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a.    Back pay and lost benefits; front pay until normal retirement

b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c.    Punitive damages for the intentional and knowing acts of committed by Defendants;

d.    Her attorney fees and the costs and expenses of this action; and

e.    Other such other relief as the Court deems just and equitable.

### TENTH CLAIM FOR RELIEF:
### RETALIATION IN VIOLATION OF THE OADA
### (AS TO ALL DEFENDANTS)

88.    Plaintiff incorporates as if re-alleged Paragraphs 1-87.

89.     By continually subjecting the Plaintiff to retaliation based on her complaints regarding to a discriminatory and hostile work environment based on her gender, race, and/or age and failing to properly ensure a non-discriminatory and non-hostile work environment. Defendants have violated the Oklahoma Anti Discrimination Act, 25 O.S. § 1350 and their actions are contrary to a clear mandate of Oklahoma public policy and statutes, as articulated by 25 O.S. §§ 1101 & 1302.

90.     Plaintiff is suited to recover damages pursuant to 25 O.S. § 1350, including "liquidated damages'" such as emotional distress and punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

      a.      Back pay and lost benefits; front pay until normal retirement
      b.      Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
      c.      Punitive damages for the intentional and knowing acts of committed by Defendants;
      d.      Her attorney fees and the costs and expenses of this action; and
      e.      Other such other relief as the Court deems just and equitable.

### ELEVENTH CLAIM FOR RELIEF
### VIOLATION OF 42 U.S.C § 1983 ACTING UNDER COLOR OF LAW
### (AS TO ALL DEFENDANTS)

91.     Plaintiff incorporates as if realleged Paragraphs 1-90.

92.     Plaintiff further contends that at all times relevant to this complaint, Defendants acted under color and pretense of law, to wit: under color of statutes, custom and usages of the State of Oklahoma to deprive her of the rights, privileges and immunities guaranteed to her in the Constitution of the United States and the State of Oklahoma and the laws of the United States and the State of Oklahoma.

93.     Plaintiff further contends Defendants acted together and individually, and within the scope of their apparent authority in order to deprive her of due process and equal protections of

the Constitutions and laws of the United States and the State of Oklahoma. Plaintiff contends that Defendants have imposed unlawful employment practices, and Defendants have approved of the hostile work environment, discrimination, and retaliation by failing to remedy Plaintiffs complaints.

94.     Plaintiff further contends that in so doing, Defendants deprived her of the privileges guaranteed to her by the Fifth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

    a.     Back pay and lost benefits; front pay until normal retirement
    b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
    c.     Punitive damages for the intentional and knowing acts committed by Defendants;
    d.     Her attorney fees and the costs and expenses of this action; and
    e.     Other such other relief as the Court deems just and equitable.

### TWELFTH CLAIM FOR RELIEF
### NEGLIGENT RELEASE OF MEDICAL INFORMATION
### (AS TO DEFENDANTS ODHS AND DAVID CLIFTON)

95.     Plaintiff incorporates as if realleged Paragraphs 1-95.

96.     Plaintiff's private medical information is protected from unauthorized disclosure by Oklahoma state law and United States federal law.

97.     Based upon numerous state statutes, as well as federal statutes, Oklahoma has established a clear public policy against unauthorized disclosure of private medical information.

98.     Plaintiff's private medical information was released, without authorization and without proper notice, by Defendant David Clifton, on behalf of and for the benefit of Defendant ODHS.

99.     Defendants actions clearly violated Plaintiff's right to be protected from unauthorized disclosure of her private medical information.

100.    Plaintiff is suited to recover damages for emotional distress and punitive damages based

upon the wanton and willful conduct of Defendants, pursuant to the *Burk* public policy tort.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

      a.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

      b.    Punitive damages for the intentional and knowing acts committed by Defendants;

      c.    Her attorney fees and the costs and expenses of this action; and

      d.    Other such other relief as the Court deems just and equitable.

## THIRTEENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AS TO ALL DEFENDANTS)

101.    Plaintiff incorporates as if realleged Paragraphs 1-100.

102.    Defendant's actions of intentional and malicious discrimination, hostile work environment and retaliation are extreme and outrageous and have caused severe emotional and psychological damage to the Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

      a.    Back pay and lost benefits; front pay until normal retirement

      b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

      c.    Punitive damages for the intentional and knowing acts committed by Defendants;

      d.    Her attorney fees and the costs and expenses of this action; and

      e.    Other such other relief as the Court deems just and equitable.

## FOURTEENTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AS TO DEFENDANT BANKS)

103.    Plaintiff incorporates as if realleged Paragraphs 1-102.

104.    Defendant's actions of intentionally and maliciously placing Plaintiff into a discriminatory and hostile work environment; allowing the discriminatory, hostile work environment and retaliation to continue; failing to protect Plaintiff from discrimination, hostile work environment and retaliation; and failing to report all the discrimination, hostile work

environment and retaliation that Plaintiff was experiencing are extreme and outrageous and have caused severe emotional and psychological damage to the Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

      a.     Back pay and lost benefits; front pay until normal retirement
      b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
      c.     Punitive damages for the intentional and knowing acts committed by Defendant;
      d.     Her attorney fees and the costs and expenses of this action; and
      e.     Other such other relief as the Court deems just and equitable.

### FIFTEENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS TO DEFENDANT KNUCKLES)

105.    Plaintiff incorporates as if realleged Paragraphs 1-104.

106.    Defendant's actions of repeated intentional and malicious verbal and physical abuse, assaults and batteries are extreme and outrageous and have caused severe emotional and psychological damage to the Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

      a.     Back pay and lost benefits; front pay until normal retirement
      b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
      c.     Punitive damages for the intentional and knowing acts committed by Defendant;
      d.     Her attorney fees and the costs and expenses of this action; and
      e.     Other such other relief as the Court deems just and equitable.

### SIXTEENTH CLAIM FOR RELIEF
### ASSAULT AND BATTERY
### (AS TO DEFENDANT KNUCKLES)

107.    Plaintiff incorporates as if realleged Paragraphs 1-106.

108.    Defendant assaulted Plaintiff when he threatened Plaintiff with imminent physical harm on July 30, 2014.

109.    Defendant battered Plaintiff when Defendant, inappropriately and without consent of Plaintiff, physically grabbed the telephone out of Plaintiff's hands.

110.    Defendant's actions were intentional and malicious.

111.    Plaintiff has suffered emotional and psychological harm as a result of Defendant Knuckles' actions.

112.    Plaintiff was unable to continue employment with ODHS because of Plaintiff's actions.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

     a.    Back pay and lost benefits; front pay until normal retirement
     b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
     c.    Punitive damages for the intentional and knowing acts committed by Defendant;
     d.    Her attorney fees and the costs and expenses of this action; and
     e.    Other such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

     a.    Back pay and lost benefits; front pay until normal retirement
     b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
     c.    Punitive damages for the intentional and knowing acts committed by Defendants;
     d.    Her attorney fees and the costs and expenses of this action; and
     e.    Other such other relief as the Court deems just and equitable.

Respectfully submitted,


By: __/s/ S. Thomas Sawyer____
    Eric W. Stall, OBA # 13886
    S. Thomas Sawyer, OBA # 22006
    SWAB & STALL, P.C.
    2021 S. Lewis Ave, Suite 335
    Tulsa, OK 74104
    P: (918) 587-2700
    F: (918) 743-1002
    Email: estall@swabstall.com
    Email: tom.sawyer3@gmail.com
    *Attorneys for Plaintiff*