## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1) JUDITH ANN HALL | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Case No.: 15-cv-670-CVE-TLW |
| | ) | |
| 1) OKLAHOMA DEPARTMENT OF | ) | |
| HUMAN SERVICES, A Governmental Agency, and | ) | |
| 2) LYNN BANKS, in her individual capacity | ) | Attorney Lien Claimed |
| Defendants. | ) | Jury Trial Demanded |

### FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, Judith Ann Hall, through her attorneys of record, Eric W. Stall and S. Thomas Sawyer of SWAB & STALL, P.C., and brings this action against Defendants, Oklahoma Department of Human Services and Lynn Banks for violations of her constitutional, statutory, and common law protected rights arising out of her employment and interference with employment by Defendants.

### PARTIES, JURISDICTION & VENUE

1.	This is an action for damages and to secure protection of, and to redress deprivation of, rights secured by: Title VII of the Civil Rights act of 1964, as amended 42 U.S.C §2000e et seq. ("Title VII"), providing for relief from a hostile work environment, retaliation or discrimination on the basis of, *inter alia*, gender and race, and 42 U.S.C. §1983, providing for relief against the deprivation rights and privileges secured to her by the United States Constitution for violations of Defendants.

2.	Plaintiff is a resident of Tulsa County, Oklahoma

3.	Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on January 22, 2015, complaining of a hostile work environment, discrimination, and retaliation based upon her gender, race and age. A Notice of

1

Right to Sue was received by Plaintiff on or about August 26, 2015. The original Complaint herein was filed within ninety days (90) of the receipt of the Notice of Right to Sue. As such, Plaintiff has fully complied with all prerequisites in this Court under Title VII.

4.      Jurisdiction of the Court is proper under §706(f)(3) of Title VII, 42 U.S.C. §2000e-5(f)(3). In addition, jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343 (Civil Rights), 28 U.S.C. §1337 (Acts of Congress regulating commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

5.      Defendant Oklahoma Department of Human Recourses ("ODHS") is an Oklahoma governmental agency conducting regular activity in the State of Oklahoma. Defendant ODHS regularly employs more than fifteen (15) people.

6.      Defendant Lynn Banks is a citizen of the United States and a resident of the State of Oklahoma, and at all times pertinent to the allegations in this Complaint an employee of Defendant ODHS.

7.      Compensatory damages are sought pursuant to Federal statutes, including 42 U.S.C. § 2000e-5(g).

8.      Costs and attorney's fees may be awarded pursuant to Federal statutes, including 42 U.S.C. § 2000e 5(g).

9.      Punitive damages are sought pursuant to Federal statutes, including 42 U.S.C. §1981, and Oklahoma statutes and common law.

10.     This action lies properly in the Northern District of Oklahoma pursuant to 28 U.S.C § 1391(b), as the unlawful employment practices complained of herein occurred within the Northern District of Oklahoma and because Defendant is a governmental entity conducting regular activity in the Northern District of Oklahoma.

## FACTS COMMON TO ALL CLAIMS

11.     Plaintiff, Judith Ann Hall, incorporates as if re-alleged aforementioned paragraphs.

12.     Plaintiff is a female, African-American, born in 1963.

13.     Plaintiff was hired by Defendant ODHS on or about July 22, 1996.

14.     Plaintiff was employed by Defendant ODHS at all times pertinent to the allegations contained in this Complaint.

15.     Defendant Banks is a black female.

16.     Robert Knuckles, a black male, at all times pertinent to the allegations in this Complaint was an employee of Defendant ODHS.

17.     Plaintiff worked with Knuckles and eventually became his supervisor.

18.     Knuckles behaviors toward Plaintiff created an abusive and dangerous, or at a minimum potentially dangerous, hostile work environment.

19.     Plaintiff repeatedly requested ODHS management that ODHS management intervene and separate Knuckles from Plaintiff.

20.     ODHS management created and perpetuated a persuasive cultural of discrimination at Defendant ODHS.

21.     Because of this discrimination, ODHS management refused to intervene and removed Knuckles because Plaintiff was a black female.

22.     Due to the actions and inactions of Defendants, Plaintiff's employment with Defendant ODHS ended on December 19, 2014.

23.     During Plaintiff's tenure with Defendant ODHS, Defendants repeatedly placed Plaintiff in abusive and dangerous, or at minimum potentially dangerous, situations, which created an abusive and hostile work environment or which created a disregard of the likelihood of creating a

hostile work environment.

24.    During Plaintiff's tenure with Defendant ODHS, Defendants repeatedly placed Plaintiff in abusive and dangerous, or at minimum potentially dangerous, situations, which created an unsafe work environment or failing to ensure a safe work environment.

25.    During Plaintiff's tenure with Defendant ODHS, Defendants repeatedly failed and refused to investigate Plaintiff's complaints of abusiveness in the workplace which created a hostile and unsafe work environment or failed to ensure that a non-hostile or safe work environment existed.

26.    During Plaintiff's tenure with Defendant ODHS, Defendants repeatedly created, or allowed to exist and to escalate, a hostile work environment for Plaintiff and failed or refused to take reasonable measures to ensure that such hostile work environment did not exist.

27.    All of these actions or inactions by Defendant ODHS in creating and allowing to exist the hostile work environment, were done or not done because Plaintiff is a black female.

28.    On or about August 15, 2000, Plaintiff (at that time Judith Ann Lewis) worked late and while Ms. Alicia Bullock (now Alicia Craig), a fellow co-worker, and Plaintiff were leaving work for the day, Knuckles followed them to the elevator. While they were waiting for the elevator door to open, Knuckles was clearly upset with Plaintiff and became angry and began verbally assaulting her. The elevator opened and Ms. Craig and Plaintiff got on and Knuckles, still verbally assaulting Plaintiff, followed the ladies into the elevator. When the elevator door closed, Knuckles continued to verbally assault Plaintiff and then physically attacked her by choking her. While Plaintiff struggled to get Knuckles hands from around her neck, Ms. Craig was telling Knuckles to stop attacking Plaintiff. Once the elevator door opened, Knuckles stopped choking Plaintiff and the two ladies fled the elevator. The next day Plaintiff reported the

incident to Defendant Banks, Plaintiff's direct supervisor. Plaintiff provided Defendant Banks with a written account describing the assault and battery. However, despite reporting the assault and battery to Defendant Banks and submitting the written statement, no action was ever taken against Knuckles and no one besides Defendant Banks ever interviewed Plaintiff regarding the incident. No corrective action was taken by ODHS management and Knuckles was not reprimanded or terminated and was allowed to continue to work alongside Plaintiff.

29.     On or about August 22, 2000, Plaintiff was at her desk and Knuckles again placed his hands around her neck in a manner threatening to Plaintiff. Plaintiff was again terrified and immediately reported the incident to Defendant Banks. No corrective action was taken by ODHS management and Knuckles was not reprimanded or terminated and was allowed to continue to work alongside Plaintiff.

30.     In the Fall of 2009, Plaintiff was promoted to Foster Care Supervisor and Knuckles was assigned to work in her unit. Knuckles had a pattern of arriving to work late and refused to call Plaintiff to advise her that he would be late. When Plaintiff attempted to speak with Knuckles about his tardiness to work, he would become rude, disrespectful and abusive. Plaintiff reported Defendant Knuckles' abusive and insubordinate behavior to Nancy Robison, ODHS County Director, a white female and part of ODHS management. Robison brushed off the incident explaining to Plaintiff that such behavior was just Knuckle's normal behavior. Plaintiff does not have personal knowledge of whether Robison talked with Knuckles, however, if any discussion was held it was to no avail as his insubordinate behavior towards Plaintiff continued without any ODHS management intervention.

31.     During 2009, on two separate occasions, Plaintiff reported to Robison that Knuckles was not timely completing his work and that the unit was receiving complaints regarding his work.

Each time that Plaintiff addressed these concerns with Knuckles, he would become loud, angry and verbally abusive towards Plaintiff. After each such incident, Plaintiff would report Knuckle's abusive and insubordinate behavior to Robison, and Robison would advise Plaintiff that she had spoken to Knuckles regarding his insubordinate behavior. Despite Robison reporting that she had admonished Knuckles regarding his insubordinate behavior, Mr. Knuckle's attitude and behavior did not change.

32.     During this time frame, ODHS management was aware of the insubordinate behavior of Knuckles and his apparent contempt for Plaintiff, yet ODHS management never investigated or remedied the situation and thereafter Knuckles insubordinate and abusive behavior escalated.

33.     In 2010, Knuckles disagreed with his yearly evaluation that was written by Plaintiff and refused to sign the evaluation. Knuckles threatened Plaintiff that she would regret what she was doing to him (presumably the critical evaluation). Thereafter, Knuckles spoke with Robison regarding the evaluation and requested that she make changes to the evaluation so that it was more favorable to Knuckles. Over Plaintiff's objection, Robison directed Plaintiff to make the changes to the evaluation and Knuckles agreed to sign the revised evaluation.

34.     In 2011, Knuckles was relocated to another ODHS office in Tulsa and worked as a foster care worker under the supervision of Ms. Kelli Heath and Banks.

35.     In 2012, Knuckles was promoted to a Foster Care Supervisor position and returned to the ODHS offices located at 444 S. Houston Ave, Tulsa, OK. Despite the known problems that Plaintiff had with Knuckles in the past, Plaintiff was assigned to mentor Knuckles in his new role as a supervisor. Knuckles resumed his abusive and behavior toward Plaintiff. On several occasions, Knuckles threatened Plaintiff that if he lost his job or was demoted that it would be her fault and she would pay. Despite being advised of the aggressive, insubordinate and abusive

behavior of Knuckles, ODHS management failed and refused to conduct any formal investigation and no other corrective action was taken by ODHS management and Knuckles was not reprimanded nor was Knuckles terminated; instead, Knuckles was allowed to continue to work under Plaintiff's mentorship.

36.     In 2012, Knuckles and his staff were having difficulty meeting ODHS deadlines for approval to place children from the shelter to foster home or from foster home to foster home. Plaintiff recalls having several conversations with Defendant Banks regarding Defendant Knuckles' inability to supervise foster care workers. On several occasions, Ms. Heath and Defendant Banks would travel over to Knuckles' office to visit with him regarding his staff's delinquent work and his supervising skills. After such meetings, Knuckles would aggressively approach Plaintiff and accuse her of reporting him and his staff to ODHS management. During this time period, Knuckles' bullying and threats against Plaintiff continued and Plaintiff regularly reported the abusive and insubordinate behavior of Knuckles to ODHS management. Despite being advised of the insubordinate and abusive behavior by Knuckles, ODHS management failed and refused to conduct any formal investigation, no corrective action was taken by ODHS management and Knuckles was allowed to continue to work under Plaintiff's supervision and mentorship.

37.     In November 2012, Plaintiff was promoted to a Foster Care Field Manager – Region 5, Plaintiff again became Knuckle's direct supervisor and Defendant Banks became Plaintiff's direct supervisor. During this time period, Knuckles continued his aggressive, abusive and insubordinate actions and behavior towards Plaintiff. Each time that Knuckles was abusive towards Plaintiff, she would report the behavior to Defendant Banks and often reported the behavior to Amy White, Deputy Director of Bridge Division, a white female and part of ODHS

management. Despite being advised of the insubordinate and abusive behavior of Knuckles, ODHS management failed and refused to conduct any formal investigation, no corrective action was taken by ODHS management and Knuckles was not reprimanded or terminated; instead, Knuckles was allowed to continue to work under Plaintiff's supervision.

38.     On one occasion in 2012-2013, a white foster care employee working under the supervision of Knuckles requested to be moved because Knuckles lacked knowledge regarding ODHS policies and procedures. Following a meeting between Plaintiff, Knuckles and David Clifton, DHS Field Analyst, a white male and part of ODHS management, ODHS management honored the white foster care employee's request to be reassigned. Thereafter, in the presence of Clifton, Knuckles became very angry and accused Plaintiff of being unfair, of instigating the worker's request to be reassigned, and accused Plaintiff of being a racist. Despite this altercation occurring in the presence of Clifton, part of ODHS management, ODHS management failed and refused to conduct any formal investigation, no corrective action was taken and Knuckles was not reprimanded or terminated but rather Plaintiff was required to continue to supervise Knuckles in a hostile work environment.

39.     In 2013, Plaintiff was advised that Knuckles had wrongfully allowed the placement of children under the age of five (5) in the Shelter when alternative family placement options existed. Plaintiff confronted Knuckles regarding the ODHS policy violation and he became angry and threatened Plaintiff. The incident was reported to Defendant Banks and ODHS management yet no complete investigation was conducted, no corrective action was taken against Knuckles by ODHS management and Knuckles was not reprimanded or terminated but rather was allowed to continue to work under the supervision of Plaintiff.

40.     In 2013, Knuckles was in Plaintiff's office yelling at her regarding a work issue. White

8

came into Plaintiff's office, sat down and told Knuckles that she never again wanted to hear him raise his voice at Plaintiff. No other corrective action was taken by ODHS management towards Knuckles. Knuckles was not further reprimanded nor was he terminated; instead, Knuckles was allowed to continue to work under Plaintiff's supervision.

41.     In 2013, while Plaintiff was still supervising Knuckles, White asked Defendant Banks to determine if Knuckles was still on his probationary period as a supervisor and if so could he be demoted. Defendant Banks notified Plaintiff and informed her as to what White had requested of Defendant Banks. Defendant Banks instructed Plaintiff to determine if Knuckles was still on his probationary period as a supervisor. Plaintiff contacted the ODHS Human Management Resource Department and was told that Knuckles probation period had ended. Plaintiff called Defendant Banks and informed her of her finding. Defendant Banks said to Plaintiff that she and Knuckles must work together.

42.     ODHS management was aware of Knuckle's aggressive, abusive and insubordinate conduct towards Plaintiff. Despite this knowledge, ODHS management failed and refused to reassign Knuckles to a position not supervised by Plaintiff and, instead, ODHS management left Plaintiff to supervise Knuckles and to be exposed to his continued aggressive, abusive and insubordinate behavior towards her.

43.     Throughout 2013, Knuckles continued his insubordinate and abusive behavior towards Plaintiff. Each time there was an incident involving Knuckles, Plaintiff reported that incident to Defendant Banks, White or both, thereby placing DHS management on notice of the continuing abuse and hostile work environment.

44.     In November 2013, Plaintiff was still directly supervising Knuckles. Plaintiff conducted a meeting with Knuckles at which time he became angry and threatened Plaintiff. During this

incident, Knuckles threatened Plaintiff by declaring that he would "get you" if he lost his job. Plaintiff was again terrified and immediately reported the incident to Defendant Banks and ODHS management. Knuckles was temporarily reassigned to a different ODHS office but returned to the supervision of Plaintiff in February 2014.

45.     Upon information and belief, witnesses to the November 2013 incident provided written statements to ODHS management.

46.     Other than the temporary reassignment, no investigation was conducted by ODHS management, no other corrective action was taken by ODHS management, Knuckles was not further reprimanded nor was Knuckles terminated because of the November 2013 incident; instead, Knuckles was allowed to continue to work under Plaintiff's supervision and Plaintiff was forced her to remain in the abuse and hostile work environment.

47.     In February 2014, Defendant Banks met with Knuckles and Plaintiff in Defendant Banks office. Defendant Banks informed both Knuckles and Plaintiff that Knuckles would be returning to work at 444 South Houston Ave, Tulsa, OK. Defendant Banks also stated that Knuckles and Plaintiff needed to work together and stop giving the white man a reason to discuss our business. Defendant Banks also said that, if Plaintiff insisted that Knuckles be issued a written reprimand, she would have to write up Plaintiff. Then Defendant Banks reminded Defendant Knuckles and Plaintiff that we did not need the white man in our business. Knuckles and Plaintiff asked if they had any questions for Defendant Banks. While driving back to the office Plaintiff received a call from Defendant Banks and asked if she was okay, Plaintiff stated that she was not okay. Defendant Banks then reminded Plaintiff that she was an at-will employee and that at any time White could discharge Plaintiff without cause and that's why the white man did not need to be involved with their business.

48.    In March or April 2014, Plaintiff telephoned Defendant Banks and reported that Knuckles was being abusive and insubordinate and that an employee working under his supervision was complaining about his lack of leadership. Defendant Banks asked that Plaintiff and Knuckles come to her office at noon on that day. Plaintiff arrived at Defendant Banks office at 11:45 am. Knuckles arrived after 12:30pm. There was no mention of Knuckle's late arrival. The meeting started and Plaintiff informed Defendant Banks of the staff's concerns that Knuckles lacked leadership skills and that Knuckles was refusing to complete tasks assigned to him by Plaintiff, his supervisor. Defendant Banks reminded Knuckles that he was to comply with Plaintiff's instructions and that he needed to be mindful that the white man was looking for a reason to intervene in their business.

49.    In June 2014, Plaintiff conducted a review of a foster care placement and determined that Knuckles had failed to timely review and approve the placement. Plaintiff was tasked with the assignment to confront Knuckles regarding his failure to timely review and approve the placement and to present him with a written reprimand. Due to Knuckle's history of abusiveness, Plaintiff asked Defendant Banks to be present at the meeting. Despite Plaintiff's history with Knuckles, Defendant Banks declined to be present and directed Plaintiff to meet with Knuckles. During the meeting, Knuckles began yelling at Plaintiff and refused to sign the written reprimand. Knuckles accused Plaintiff of harassing him and trying to cause him to lose his job. Knuckles threatened Plaintiff that if he lost his job, she would regret it. Plaintiff reported the aggressive, abusive and insubordinate behavior and actions of Knuckles to ODHS management. No corrective action was taken by ODHS management, and Knuckles was not reprimanded or terminated; instead, Knuckles was allowed to continue to work under Plaintiff's supervision which forced Plaintiff to remain in the abusive and hostile work environment.

50.     In July 2014, Plaintiff was attending training out of state and had to have several phone conferences with Knuckles regarding several emails that were flagged as important. One of the conversations was regarding a resource parent being approved to receive money due to her from a settlement agreement. Plaintiff asked if the family had successfully completed the entire requirement process and Knuckles replied yes. Plaintiff knew Knuckle's statement was false and when she confronted him he could not explain his initial response. Plaintiff explained to Knuckles that his action would be reported to ODHS management. Knuckles began yelling at Plaintiff during the conversation. Plaintiff reported Knuckle's aggressive, abusive and insubordinate behavior to Defendant Banks. Despite the report, no corrective action was taken by ODHS management and Knuckles was not reprimanded or terminated; instead, Knuckles was allowed to continue to work under Plaintiff's supervision which forced Plaintiff to remain in the abusive and hostile work environment.

51.     By mid-year 2014, Plaintiff had become so afraid of Knuckles that she insisted that she always have a witness present in all of her communications with Knuckles.

52.     In July 30, 2014, Knuckles verbally assaulted and threatened Plaintiff at the ODHS offices.  During this incident, Knuckles became very angry at Plaintiff. When Plaintiff reached for the phone to call a supervisor, Knuckles snatched the phone receiver from her hand and raised the phone receiver is if he was going to strike Plaintiff. When Knuckles made additional threatening statements to Plaintiff, she fled the office. Despite having knowledge of the history of the abuse suffered by Plaintiff at the hands of Knuckles, ODHS chose not to tell Plaintiff that earlier on July 30, 2014, Knuckles had complained to Defendant Banks and ODHS that Plaintiff treated him unfairly. Had Plaintiff been advised of this complaint by Knuckles, she would never have agreed to meet with Knuckles and this incident would not have occurred.

12

53.     On August 19, 2014, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD) due to the events she suffered at the hands of Defendants. Plaintiff was advised not to return to work and was subsequently placed on FMLA leave.

54.     Only after Plaintiff notified Ms. Tricia Howell of her PTSD condition that Defendant ODHS initiated an investigation into Plaintiff's allegations against Knuckles and the failure of Defendant ODHS to take reasonable corrective actions.

55.     On November 13, 2014, Defendant ODHS informed Plaintiff her leave of absence was being cancelled and that Plaintiff was required to return to work at ODHS. Defendant ODHS did not inform Plaintiff that any changes were made to protect Plaintiff from further discrimination and harm and Defendant ODHS did not provide any assurances that Plaintiff would be protected from further discrimination and harm.

56.     On December 19, 2014, Plaintiff determined that her medical condition and the apparent persistent discrimination and hostile work environment at ODHS, that ODHS management refused to acknowledge and remedy, mandated that Plaintiff terminate her employment relationship with Defendant ODHS.

57.     At no time during the span of years in which Knuckles was allowed to carry on his abusive and insubordinate actions and attitudes towards Plaintiff did ODHS management conduct any investigation into Plaintiff's allegations and the accounts of those numerous persons that witnessed Knuckles maltreatment of Plaintiff. Furthermore, ODHS management never took any corrective action towards Knuckles, Knuckles was not reprimanded or terminated and was allowed to continue to work alongside Plaintiff.

58.     Each incident in which Knuckles was verbally, emotionally and physically abusive towards Plaintiff caused Plaintiff emotional distress which ultimately led to her suffering from

PTSD. Had ODHS management appropriately and reasonably intervened following the first incident of abusive and insubordinate actions by Knuckles towards Plaintiff, the emotional and physical damages to Plaintiff would never have occurred.

59.      Generally, during the time period of 2000 to 2011, while under the supervision of Plaintiff, Knuckles' aggressive, abusive and insubordinate behavior towards Plaintiff was something that occurred on nearly a weekly basis and was witnessed by numerous ODHS employees and ODHS management.

60.      Generally, during the time period of 2012 to 2014, while under the supervision of Plaintiff, Knuckles' aggressive, abusive and insubordinate behavior towards Plaintiff was something that occurred on nearly a daily basis and was witnessed by numerous ODHS employees and ODHS management.

61.      During the course of her employment at Defendant ODHS, Plaintiff's work environment was permeated with an abusive and hostile environment, this abusive and hostile environment caused by Defendant Knuckles and ODHS management actions and inaction, was allowed to continue because of the persuasive cultural of discrimination at Defendant ODHS, which was created and allowed to continue by ODHS management.

62.      Plaintiff was forced to work in and deal with this hostile environment on a regular basis during her employment at Defendant ODHS.

63.      Any time Plaintiff complained of or reported what was happening to her, ODHS management failed and refused to conduct an investigation and failed and refused to take any corrective actions; instead, ODHS management forced Plaintiff to continue to endure an abusive and hostile work environment, and allowed to continue because of ODHS management discrimination against Plaintiff.

64.     ODHS management threatened Plaintiff with disciplinary action for complaining about the discrimination caused hostile work environment, which ultimately caused her to be emotionally and physically harmed and damaged, including suffering from PTSD.

65.     Throughout Plaintiff's employment at Defendant ODHS, ODHS management failed to take appropriate corrective actions to eliminate the abusive and hostile environment that Plaintiff endured because Plaintiff was a black female.

66.     Further, ODHS management failed to follow ODHS policies and procedures regarding such wrongful conduct, and facilitated an environment of abuse and hostility by failing to eliminate the cause.

67.     ODHS management selectively and purposefully treated Plaintiff differently because she was a black female when she complained about Knuckles' behavior and that such behavior was creating an abusive and hostile work environment.

68.     In contrast, ODHS management intervened immediately when a white supervisor complained about Knuckles' behavior.

69.     A white male supervisor had difficulty and problems supervising Knuckles. The white male supervisor requested that ODHS management move Knuckles. ODHS management immediately honored his request and moved Knuckles.

70.     A white female supervisor had difficulty and problems supervising Knuckles. The white female supervisor requested ODHS management transfer Knuckles out of her supervision. The ODHS management immediately honored the white female supervisor's request and transferred Knuckles out of her supervision.

71.     A white female supervisor had difficulty and problems supervising Knuckles. The white female supervisor requested from ODHS management that she no longer supervise Knuckles.

ODHS management immediately honored her request and she no longer had to supervise Knuckles.

72.     Plaintiff was not the only black supervisor to have problems with Knuckles and have ODHS management ignore the situation.

73.     A black female supervisor was supervising Knuckles, and that black female supervisor had difficulty and problems supervising Knuckles. The black female supervisor requested ODHS management transfer Knuckles out of her supervision. The ODHS management refused her request to move Knuckles. The black supervisor eventually had to initiate a transfer on her own for herself and she transferred away from Knuckles.

74.     In further support that ODHS management selectively and purposefully treated Plaintiff differently because she was a black female. ODHS management intervened immediately, when a white supervisor or employee complained about another employee with whom they were have difficulty.

75.     A white female supervisor was having difficulty with one of the employees she supervised, a white male. The white male employee was harassing the white female supervisor. The white female supervisor requested the white male employee be removed from her supervision. ODHS management immediately intervened and honored the white female supervisor's request and the white male employee was moved from her supervision.

76.     A white female supervisor was alleged to be in a dating relationship with one the employees she supervised, a white male. The dating relationship ended which caused inappropriate behaviors. ODHS immediately intervened and separated the two upon the request of the white female supervisor.

77.     A white female supervisor was supervising a white male. An incident occurred and the

white female supervisor no longer wanted to supervisor the white male employee. ODHS immediately intervened and the white male was transferred away from the supervision of the white female.

78.     A white female was supervising a black female. An incident occurred and the white female no longer wanted to supervise the black female. ODHS intervened and honored the white female supervisor's request. The white female was transferred away from supervising the black female.

79.     Two white male employees complained to ODHS management about a third white male's inappropriate behavior. ODHS management transferred the third white male employee away from the complaining two white male employees.

80.     A white male employee complained to ODHS management that his white female supervisor was harassing him. ODHS management immediately intervened and the white female supervisor was moved to another office.

81.     A white female employee accused a white male employee of harassment. ODHS management address the white female's complaint immediately.

82.     Even regarding unsubstantiated rumors, ODHS management treated Plaintiff differently because she was a black female.

83.     In 2014, on two separate occasions, Plaintiff was approached, first by White and then by Woodie Gamble, and asked about unfounded rumors that were circulating that Plaintiff and Knuckles were having an intimate relationship. David Clifton also spoke to Plaintiff about these rumors. ODHS management stated to Plaintiff that they believed that this rumored relationship was the cause of the insubordination and abusiveness of Knuckles toward Plaintiff. Plaintiff vehemently denied the false rumors.

84.     Even if that rumored relationship had existed, which it did not, ODHS management treated Plaintiff differently because she was a black female. When a relationship was rumored to be occurring between a white male manager and a white female. ODHS management investigated and the white male was no longer able to supervise the white female. Yet when ODHS management insinuated a relationship was occurring between Plaintiff, a black female, and Knuckles, a black male, ODHS management did not separate Plaintiff and Knuckles despite the rumored relationship.

85.     ODHS management speaking to Plaintiff regarding such false rumors, shows that ODHS management had full knowledge of the abusive and hostile work environment that Plaintiff was enduring. Further, it shows that ODHS management was attempting to conceal or deflect ODHS responsibility in creating and allowing to continue that abusive and hostile work environment.

86.     ODHS management cultivated and allowed to persist a persuasive discriminatory and hostile work environment for Plaintiff because she was a black female.

87.     ODHS management is almost entirely white, and all of the ODHS upper management is white.

88.     Plaintiff was not the only black employee to be treated differently than white employees by Defendant ODHS.

89.     On information and belief, well qualified black employees were repeatedly passed over for promotions and advancement in favor of less qualified white employees.

90.     On information and belief, other black supervisors who complained about discrimination suffered adverse actions against them, including termination.

91.     On information and belief, black employees were constantly worried about complaining to ODHS management for fear of repercussions.

92.     Defendant Banks, part of ODHS management, was fully aware of the persuasiveness of the cultural of discrimination that was occurring at ODHS.

93.     Defendant Banks not only allowed the persuasiveness of discrimination to continue, but Defendant Banks took an active role in continuing such discrimination for the white upper management of ODHS.

94.     When Defendant Banks told Plaintiff that Plaintiff did not want the "white man" in their business, that statement was meant as a threat to Plaintiff by Defendant Banks and ODHS management.

95.     Defendant Banks meant that if Plaintiff were to keep complaining about the abusive and hostile work environment, that the "white man" would get involved and Plaintiff would suffer consequences to her career at ODHS. In short, Defendant Banks was telling Plaintiff to quit complaining or Plaintiff would lose her job.

96.     On information and belief, Defendant Banks refusal to act on Plaintiff's complaints was with full knowledge of ODHS management and in the furtherance of ODHS discriminatory cultural. Defendant Banks even refused to report some of Plaintiff's complaints to ODHS management.

97.     Defendant Banks also retaliated and threatened Plaintiff for complaining of the abusive and hostile work environment when Defendant Banks told Plaintiff that Plaintiff could be written up or terminated because she was complaining.

98.     Robison, part of ODHS management, was fully aware of the persuasiveness of the cultural of discrimination at DHS. Robison allowed that discrimination to continue and even helped discrimination to continue.

99.     Robison, on many occasions, talked about how ODHS management was racist.

100.    Robison refused to act when Robison was informed about Plaintiff's complaints regarding Knuckles' behavior toward Plaintiff and that such behaviors were creating an abusive and hostile work environment for Plaintiff.

101.    In contrast, Robison acted and intervened when a white supervisor had issues with Knuckles. Robison transferred Knuckles from that white supervisor to Plaintiff, despite knowing that Plaintiff already had issues with Knuckles.

102.    On information and belief, Robison changed a truthful evaluation of Knuckles by Plaintiff because Plaintiff was black.

103.    On information and belief, Knuckles' behaviors toward Plaintiff were because Plaintiff was a black female.

104.    On numerous occasion, Knuckles told Plaintiff that what she reported to ODHS management about him did not matter because nothing would be done to him.

105.    Because of ODHS management pattern of discriminatory actions and inactions, Knuckles was allowed to harass and be abusive toward black supervisors and employees without any repercussions from ODHS management.

106.    Knuckles was reprimanded and/or moved when a white supervisor or white employee complained to ODHS management.

107.    Knuckles was not reprimanded and/or moved when a black supervisor or black employee complained to ODHS management.

108.    Collectively and individually, Defendants' actions and inactions have contributed to and created a discriminatory, abusive, hostile, and unsafe work environment which has caused much humiliation, embarrassment, pain and suffering, mental anguish and distress, discomfort, and emotional damage to Plaintiff. In addition, as a result Defendants' actions and inactions, Plaintiff

has been diagnosed with, and is now suffering from, PTSD.

## FIRST CLAIM FOR RELIEF:
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (AS TO DEFENDANT ODHS)

109.    Plaintiff incorporates as if re-alleged aforementioned paragraphs.

110.    Plaintiff is an African-American female and belongs to a protective class

111.    Plaintiff was subjected to unwelcome harassment by Knuckles' abusive and hostile behavior towards Plaintiff and by ODHS management actions and inactions that allowed, perpetuated and failed to stop Knuckles' abusive and hostile behavior towards Plaintiff.

112.    Plaintiff was subjected to this unwelcome harassment because she is an African-American female. Due to ODHS management discriminatory based actions and inactions because Plaintiff is an African-American female, Knuckles was allowed by ODHS management to continue to harass Plaintiff because she is an African-American female.

113.    Due to the severity of the unwelcome harassment and ODHS management actions and inactions that allowed, perpetuated and failed to stop Knuckles' abusive and hostile behavior towards Plaintiff, Plaintiff had to endure an abusive and hostile work environment, was not properly promoted and eventually had to resign due to the severity of the harassment.

114.    By continually subjecting the Plaintiff to a hostile work environment based on her gender and/or race and failing to properly ensure a non-hostile work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

      a.     Back pay and lost benefits; front pay until normal retirement
      b.     Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
      c.     Punitive damages for the intentional and knowing acts committed by Defendants;
      d.     Her attorney fees and the costs and expenses of this action; and

e.      Other such other relief as the Court deems just and equitable.

**SECOND CLAIM FOR RELIEF:**
**DISCRIMINATION IN VIOLATION OF TITLE VII**
**(AS TO DEFENDANT ODHS)**

115.    Plaintiff incorporates as if re-alleged aforementioned paragraphs.

116.    Plaintiff is an African-American female and belongs to a protective class

117.    Plaintiff suffered adverse employment actions. She was forced to endure an abusive and hostile work environment, was not properly promoted, and eventually was forced to resign because she is an African-American female.

118.    Plaintiff's adverse employment actions were caused by ODHS management's discriminatory actions and Defendant ODHS's persuasive cultural of discrimination based on race. Defendant ODHS refused to intervene and stop the abusive and hostile work environment endured by Plaintiff because Plaintiff is an African-American female. Further, Plaintiff was not properly promoted and eventually was forced to re-assign because of the abusive and hostile work environment.

119.    By continually subjecting the Plaintiff to discrimination based on her gender and/or race and failing to properly ensure a non-discriminatory work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a.    Back pay and lost benefits; front pay until normal retirement
b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c.    Punitive damages for the intentional and knowing acts committed by Defendants;
d.    Her attorney fees and the costs and expenses of this action; and
e.    Other such other relief as the Court deems just and equitable.

**THIRD CLAIM FOR RELIEF:**
**RETALIATION IN VIOLATION OF TITLE VII**

## (AS TO DEFENDANT ODHS)

120.    Plaintiff incorporates as if re-alleged aforementioned paragraphs.

121.    Plaintiff's complaints about the discriminatory caused abusive and hostile work environment was protected opposition to such discrimination. Plaintiff was complaining about the abusive and hostile work environment that ODHS management was allowing to continue because Plaintiff was a black female and treated differently than white employees.

122.    The continual discriminatory caused abusive and hostile work environment that Plaintiff had to endure was materially adverse to Plaintiff, as well as any reasonable employee. Further, Plaintiff having to resign because she had to endure continual discriminatory caused abusive and hostile work environment was materially adverse to Plaintiff, as well as any reasonable employee.

123.    A connection exists between Plaintiff's complaining and Plaintiff continuing to have to endure the abusive and hostile work environment which led to Plaintiff being forced to resign. ODHS management perpetuating and continuing refusal to intervene in the discriminatory caused abusive and hostile work environment was in retaliation for Plaintiff complaining about such. Because Plaintiff complained and she was a black female, ODHS management perpetuated and refused to intervene in the discriminatory caused abusive and hostile work environment in an effort to make Plaintiff's employment with Defendant ODHS so difficult that Plaintiff would quit, which was successful.

124.    Further, ODHS management directly threatened Plaintiff with adverse employment actions, being written up and terminated, because she was complaining about the discriminatory caused abusive and hostile work environment.

125.    By continually subjecting the Plaintiff to retaliation based on her complaints regarding a

hostile work environment based on her gender and/or race and failing to properly ensure a non-hostile work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a.    Back pay and lost benefits; front pay until normal retirement
b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c.    Punitive damages for the intentional and knowing acts committed by Defendants;
d.    Her attorney fees and the costs and expenses of this action; and
e.    Other such other relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF:
## RETALIATION IN VIOLATION OF TITLE VII
## (AS TO DEFENDANT ODHS)

126.    Plaintiff incorporates as if re-alleged aforementioned paragraphs.

127.    Plaintiff complained that ODHS management was refusing to intervene and stop the harassment by Knuckles because she was a black female.

128.    The continual discriminatory caused abusive and hostile work environment that Plaintiff had to endure was materially adverse to Plaintiff, as well as any reasonable employee. Further, Plaintiff having to resign because she had to endure continual discriminatory caused abusive and hostile work environment was materially adverse to Plaintiff, as well as any reasonable employee.

129.    A connection exists between Plaintiff's complaining and Plaintiff continuing to have to endure the abusive and hostile work environment which led to Plaintiff being forced to resign. ODHS management perpetuating and continuing refusal to intervene in the discriminatory caused abusive and hostile work environment was in retaliation for Plaintiff complaining about such. Because Plaintiff complained and she was a black female, ODHS management perpetuated and refused to intervene in the discriminatory caused abusive and hostile work environment in an

effort to make Plaintiff's employment with Defendant ODHS so difficult that Plaintiff would quit, which was successful.

130.    Further, ODHS management directly threatened Plaintiff with adverse employment actions, being written up and terminated, because she was complaining about the discriminatory caused abusive and hostile work environment.

131.    By continually subjecting the Plaintiff to retaliation based on her complaints regarding discrimination based on her gender and/or race and failing to properly ensure a non-discriminatory work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

> a.    Back pay and lost benefits; front pay until normal retirement
> b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
> c.    Punitive damages for the intentional and knowing acts committed by Defendants;
> d.    Her attorney fees and the costs and expenses of this action; and
> e.    Other such other relief as the Court deems just and equitable.

**FIFTH CLAIM FOR RELIEF:**
**VIOLATION OF 42 U.S.C § 1983 ACTING UNDER COLOR OF LAW**
**(AS TO DEFENDANT BANKS)**

132.    Plaintiff incorporates as if re-alleged aforementioned paragraphs.

133.    Plaintiff contends that at all times relevant to this complaint, Defendant Banks acted under color and pretense of law, to wit: under color of statutes, custom and usages of the State of Oklahoma to deprive her of the rights, privileges and immunities guaranteed to her in the Constitution of the United States and the State of Oklahoma and the laws of the United States and the State of Oklahoma.

134.    Plaintiff contends Defendant Banks acted within the scope of their apparent authority in

order to deprive her of due process and equal protections of the Constitutions and laws of the United States and the State of Oklahoma. Plaintiff contends that Defendant Banks has imposed unlawful employment practices, and Defendant Banks has approved of the hostile work environment, discrimination, and retaliation by failing to remedy Plaintiffs complaints.

135.   Plaintiff contends that in so doing, Defendant Banks deprived her of the privileges guaranteed to her by the Fifth and Fourteenth Amendments of the United States Constitution.

136.   Defendant Banks was Plaintiff's direct supervisor, and was directly in control of Plaintiff's work at Defendant ODHS.

137.   Defendant Banks denied Plaintiff procedural due process by depriving Plaintiff of her liberty and property interests in Plaintiff's employment at Defendant ODHS.

138.   Plaintiff possessed a protected interest in her employment with Defendant ODHS, a state agency, and she also possessed a protected interest that such employment with Defendant ODHS would be hostile-free and safe.

139.   Plaintiff employment with Defendant ODHS was not hostile-free and safe, which led to Plaintiff's losing her employment with Defendant ODHS.

140.   Defendant Banks was directly responsible for Plaintiff's employment with Defendant ODHS, and also directly responsible for Plaintiff's employment not being hostile-free and safe and for Plaintiff's losing her employment with Defendant ODHS.

141.   Plaintiff was not afforded the appropriate level of process by Defendant Banks. Plaintiff informed Defendant Banks of the hostile and unsafe work environment Plaintiff was having to endure. Defendant Banks did nothing. Defendant Banks did not have Plaintiff's complaints investigated. Defendant Banks did not stop the hostile and unsafe work environment.

142.   Defendant Banks denied Plaintiff her substantive due process rights.

143.    Plaintiff has a protected liberty interest in her employment with Defendant ODHS and that her employment with Defendant ODHS is a hostile-free and safe environment.

144.    Defendant Banks abused her authority over Plaintiff and further used her authority as an instrument of oppression.

145.    Over years, Defendant Banks continually refused to stop the hostile and unsafe work environment that Plaintiff was enduring.

146.    Defendant Banks actions or inactions were intentional.

147.    Defendant Banks even threatened Plaintiff with adverse employment action.

148.    As such, Defendant Banks actions and inactions shocks the conscience.

149.    Defendant Banks violated Plaintiff's equal protection rights.

150.    Defendant Banks intentionally discriminated against and allowed the abusive and hostile behavior of Knuckles to continue because Plaintiff is a black female.

151.    Defendant Banks refusal to act on Plaintiff's complaints was with full knowledge of ODHS management and in the furtherance of ODHS discriminatory cultural. Defendant Banks even refused to report some of Plaintiff's complaints to ODHS management.

152.    Defendant Banks' threatened Plaintiff with the invocation of the "white man" in their business. The statement was meant as a threat to Plaintiff by Defendant Banks and ODHS management that Plaintiff, as a black woman, would be terminated just for complaining.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

      a.    Back pay and lost benefits; front pay until normal retirement

      b.    Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

      c.    Punitive damages for the intentional and knowing acts committed by Defendants;

      d.    Her attorney fees and the costs and expenses of this action; and

      e.    Other such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a.   Back pay and lost benefits; front pay until normal retirement
b.   Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;
c.   Punitive damages for the intentional and knowing acts committed by Defendants;
d.   Her attorney fees and the costs and expenses of this action; and
e.   Other such other relief as the Court deems just and equitable.

Respectfully submitted,

By:   __/s/ S. Thomas Sawyer____
Eric W. Stall, OBA # 13886
S. Thomas Sawyer, OBA # 22006
SWAB & STALL, P.C.
2021 S. Lewis Ave, Suite 335
Tulsa, OK 74104
P: (918) 587-2700
F: (918) 743-1002
Email: estall@swabstall.com
Email: tom.sawyer3@gmail.com
*Attorneys for Plaintiff*